438

Argued January 6, affirmed March 18, petition for rehearing
denied April 21, 1970

REES ᴇᴛ ᴀʟ, *Respondents, v.* SISTERS OF
CHARITY, *Appellant.*

466 P. 2d 935

*Curtis W. Cutsforth,* Portland, argued the cause
for appellant. With him on the briefs were King,

Miller, Anderson, Nash & Yerke, Frank E. Nash, and Fredric A. Yerke, Jr., Portland.

*Stephen B. Herrell,* Portland, argued the cause for respondents. With him on the brief were Black, Helterline, Beck & Rappleyea, and Peter B. Higgins, Portland.

HOLMAN, J.

Defendants operate a hospital. Plaintiffs, who are doctors, operated for defendants the radiology department of the hospital from the time it was opened. Upon the termination of the doctors' relationship with the defendants (hereinafter also referred to as hospital), a dispute arose concerning whether the doctors had an interest in payments made subsequent to termination for work performed by them prior thereto. The doctors sought an accounting and the hospital appealed from a decree and judgment in favor of the doctors.

At the commencement of their relationship, the parties operated under an oral agreement pursuant to which each month the costs of operating the department were paid out of the amounts actually received and credited by the hospital to x-ray billings, and the remaining sum was divided equally between them. Payments by patients on bills owed to the hospital were first credited by the hospital to hospital charges other than those for x-ray. The effect was to make the x-ray billings by the hospital a receptacle for the hospital's bad debts. Though this would appear to be an inequitable way to apportion payments on bills made by patients, there is no dispute concerning it.

After operating in this manner for a number of years, the hospital changed its method of computing that portion of its receipts credited to x-ray billings. Payments to the hospital in any given month were divided between x-ray charges and other hospital charges in the same proportion that total x-ray billings for that month bore to the same month's total hospital billings. The division is illustrated by the following formula:

$$\frac{\text{March x-ray billings}}{\text{March hospital billings}} \times \text{March hospital receipts} =$$

Receipts attributable to x-ray billings

It is apparent that March billings were probably not the billings which brought in most of March receipts. By far the largest portion of March receipts was necessarily the result of billings for work performed in months prior to March. After the percentage of cash receipts allotted to the operation of the radiology department was determined by the above arbitrary formula, the doctors' share was determined in the same manner as before.

After years of operating under the new method of payment, the doctors and the hospital terminated their relationship. The dispute then arose concerning whether the doctors were entitled to be reimbursed by the hospital on the basis of collections made after termination which were attributable to billings for x-ray work performed prior thereto by the doctors.

The parties could agree to any sort of an arrangement without regard to whether it made sense in terms of correct accounting practice. However, there is no evidence that, in advance of either the old or the new agreement or at any other time, the parties sat down

and agreed whether the doctors would retain an interest in collections on x-ray billings which were paid in months subsequent to that in which the work was performed.

There can be no real argument but that under the original method of payment the parties must have intended that the doctors would retain an interest in payments on past billings. At the same time the doctors were performing work for defendants in the hospital in question, they also were performing the same kind of work in another hospital also operated by defendants. The method of payment in the other hospital was the same as the original method of payment in the hospital involved here. When the doctors' services in the other hospital were terminated, the hospital paid the doctors $25,000 for their interest in billings for work they had performed and for which payment had not yet been received.

The next question is whether it was the parties' intention to change this aspect of their agreement when the method of computing the amount of the hospital receipts attributable to x-ray billings was changed. It is difficult to believe that there was any such change contemplated by the parties because, when the method of computation was changed, there was no payment by the hospital to the doctors for their interest in outstanding billings under the old arrangement. Had such payment been made, there would have been some notice to the doctors that, in the future, the hospital contemplated a different arrangement concerning the doctors' interest in outstanding billings.

In addition, the second payment plan still paid the doctors, as did the first, a portion of the *current hos-*

*pital receipts* which were, for the most part, *the result of past months' x-ray work*. The only essential difference under the new plan was that a more equitable method was used in dividing the hospital receipts between x-ray billings and other hospital charges, so that x-ray billings were no longer a receptacle for the hospital's bad debts. It is true that the current receipts were apportioned between x-ray billings and billings for other services in accordance with the percentage that x-ray billings bore to total hospital billings in the month the money was received, but this does not obviate the fact that it was money which represented past and not current work which was being divided.

The hospital contends that the new formula should be written as follows:

$$\frac{\text{March hospital receipts}}{\text{March hospital billings}} \times \text{March x-ray billings} =$$

Value of March billings

The hospital admits that the figure which results is the same, but contends that the above formula shows that the parties really were intending to apportion their respective interests in the March billings rather than in the March receipts. The evidence discloses that the hospital's suggested equation apparently was an ingenious idea acquired subsequent to the taking of testimony. The last thing the hospital did was to introduce a large sheet upon which their counsel had written his understanding of the method by which the computation was made under both the new and the old plans. The method in question was shown as being computed by using x-ray billings as the numerator and hospital billings as the denominator and multiplying

gross receipts by the resulting fraction. Work sheets of the hospital show the same method of computation. Had it been intended that the hospital would pay the doctors each month for the doctors' interest in the billings for the same month, the logical and simple way of doing it would have been to take each month's x-ray billings and reduce them by the hospital's average bad debt factor, deduct the cost of operation, and divide the balance.

In the absence of direct evidence that they were told, it is difficult to see how the doctors were to be apprised that the hospital intended that the month's billings were being apportioned when the amount of money they received was exactly the same as if the month's receipts were being divided. This is particularly true when, under their original agreement, cash receipts were divided as they were received, and the doctors had received no separate reimbursement for their interest in future billings at the time the change was made to the new method. It is true that there was a radical increase in the doctors' pay when the method of computation was changed, but this was clearly attributable to the fact that the radiology department was no longer a receptacle for the hospital's bad debts.

The judgment of the trial court is affirmed.

McALLISTER, J., dissenting.

Under the original formula adopted in 1941 when Providence Hospital was opened, the doctors' income depended solely on the billings of the radiology department. As work was billed they acquired an interest in the accounts due; when the X-ray bills were paid the doctors received a share of the payments. But it was a share only of the payments on the

amounts billed by their own department and their interest in those billings continued until the bills were paid. In effect, they had a proportionate interest in the billings of the radiology department as they accrued.

On the other hand, under the formula adopted in 1953, known as Formula No. 2, the determinative factor was the monthly cash receipts of the hospital as a whole. Of those receipts the doctors received a percentage each month. The percentage varied depending upon the ratio between the monthly billing of the radiology department and the monthly billings of the hospital, but that percentage was applied each month to the total cash receipts of the hospital for that month. No attention was paid to the receipts of the radiology department nor to the unpaid radiology bills. Instead, the total hospital receipts were simply divided between the hospital and the doctors according to the formula. In effect, under Formula No. 2, the doctors' interest was in cash received by the hospital regardless of its source. When they were paid each month their interest in those receipts was satisfied. Under this approach the doctors had no concern with amounts billed by their department but not yet paid. Even if none of the bills for radiological services were ever paid the doctors would have been compensated each month.

After having received a share of the hospital receipts each month for a period of nine years without regard to the unpaid billings of the radiology department, the doctors are now trying to reject Formula No. 2 and reinstate Formula No. 1. Their object is to claim a share of the unpaid billings of the radiology department as of the date their employment was ter-

minated. In so doing they are ignoring the fact that whether the radiology bills were paid or not had no direct bearing on their compensation during all the years in which Formula No. 2 was in force.

The doctors attempt to justify their effort to claim additional compensation under a formula discarded in 1953 on the ground that they never understood the new formula and never agreed to its use. The doctors concede that Formula No. 2 was a more equitable formula. Since the doctors accepted the benefits of the new formula for nine years their present contention is not worthy of serious consideration.

I dissent.

SLOAN, J., joins in this dissent.